IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

CHIH-KAI LIAO,                                    §
                                                  §
            *Plaintiff,*                           §
                                                  §
vs.                                               §                    5-22-CV-01359-XR
                                                  §
UNIVERSITY OF TEXAS AT SAN                        §
ANTONIO,                                          §
                                                  §
            *Defendant.*                           §
                                                  §
                                                  §

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Xavier Rodriguez:**

This Report and Recommendation concerns Defendant's Motion to Dismiss Plaintiff's
Fourth Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Dkt.
No. 41. The motion was referred for resolution pursuant to Rules CV-72 and 1 of Appendix C to
the Local Rules for the United States District Court for the Western District of Texas. *See* Text
Order, Feb. 9, 2024. Authority to enter this recommendation stems from 28 U.S.C.
§ 636(b)(1)(B).

For the reasons set forth below, Defendant's Motion to Dismiss Plaintiff's Fourth
Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6), Dkt. No. 41, should
be **GRANTED in part and DENIED in part**.

**Factual and Procedural Background**

Plaintiff Chih-Kai Liao, a Ph.D. student at the University of Texas at San Antonio
(UTSA), sued UTSA for discrimination and retaliation under Titles VI and VII of the Civil

1

Rights Act of 1964. *See* Dkt. Nos. 2 (original complaint) & 38 (live complaint). Plaintiff Liao has amended his complaint four times. *See* Dkt. Nos. 12, 13, 20 & 38.

Liao filed his fourth amended complaint, its fifth iteration and presently the live complaint, after the District Court held a status conference to refine the issues and address pleading requirements. Dkt. Nos. 30 & 36. At the status conference, the District Court ordered Liao to clarify certain facts and claims. *See* Dkt. No. 36 (hearing transcript) at 14:2-6. Regarding Liao's discrimination claims under Title VI, the District Court ordered that Liao must clarify: (1) whether he reported alleged discrimination to an appropriate authority, *id*. at 11:20-12:6 and (2) whether he ever received his Ph.D. from UTSA. *Id*. at 12:7-13:1. As for Liao's employment-discrimination claims under Title VII, the District Court ordered Liao to: (1) explain how his employment is related to his Ph.D. dissertation, *id*. at 5:21-24; (2) separate background information from facts relevant to his Title VI claims, *id*. at 6:3-12; (3) clarify whether he is bringing claims of discrimination based on sex, *id*. at 6:14-16; and, finally, (4) allege a similarly situated comparator for his claims. *Id*. at 6:17-21. The District Court also clarified at the status conference that the pertinent time period for Liao's various discrimination claims is December 11, 2020, through October 7, 2021. *See id*. at 3:15-4:8; *see also* Dkt. Nos. 20-1 (Equal Employment Opportunity Commission (EEOC) charge of discrimination signed Oct. 7, 2021) & 20-2 (EEOC right to sue letter). The District Court further ordered that Liao could not file his fourth amended complaint anonymously, *id*. at 15:20-25, and warned that if Liao did not file the amended complaint within fourteen days, the case would be dismissed. *Id*. at 16:5-8.

After the status conference and before Plaintiff Liao filed the live complaint, Liao's counsel withdrew. Dkt. Nos. 33 (motion) & 34 (order). Liao requested an extension of time to file the ordered amended complaint, which the District Court granted. Dkt. No. 35 (motion) & 37

(order). Liao ultimately filed the live complaint using his name, albeit two days after the extended deadline passed. Dkt. No. 38. Because of Liao's pro se status, the Court grants Liao leeway and considers the amended complaint timely filed.

The live complaint is meandering and often difficult to understand. As best the Court can discern—taking all well-pleaded facts as true and drawing reasonable inferences in Liao's favor, as required at the motion-to-dismiss stage—the pertinent alleged facts are as follows:

Defendant UTSA recruited and offered Liao a fully funded position as a Ph.D. student, which Liao accepted. *Id*. ¶ 1. UTSA's offer provided Liao tuition and living support under an F-1 immigration visa, which restricted Liao's employment to opportunities within the university. *Id*. The germ of Liao's claims occurred between October 2019 and January 2020,[1] when he was called to testify in various administrative and Title IX investigations against his Ph.D. advisor. *Id*. ¶¶ 14-16, 90. Members of UTSA's administration, according to Liao, pressured Liao to perjure himself in those proceedings and in so doing "link his mentor to any possible violations relate[d] to Title IX." *Id*. ¶ 14. Liao experienced a similar situation when called to testify in a Title VII investigation. *Id*. ¶ 90.

Because Liao refused to perjure himself, as Liao tells things, he suffered retaliation at the hands of UTSA. This occurred in December of 2019, when department chair Dr. Eric Brey threatened to restrict Liao's access to funding. *Id*. ¶¶ 17, 21. Then, in February of 2020, Dr. Brey forced Liao to run an experiment in violation of lab-safety protocols and outside the scope of Liao's employment. *Id*. ¶¶ 23, 76. When Liao protested, Dr. Brey told Liao that he "ha[d] no right to refuse and [should] think about his position as [an] international student" in need of job support. *Id*. ¶ 23.

---

[1] The live complaint states that these investigations occurred "[d]uring the time of October 2019 to January 2019." Dkt. No. 38 ¶ 14. Based on context, the Court views this as a scrivener's error.

Beyond these discrete acts, Liao alleges that Defendant UTSA retaliated or discriminated against him through acts that spanned longer periods of time, although the connection between these acts and Liao's protected status or any alleged protected activity is often difficult or impossible to discern from the complaint. From 2019 through 2021, Dr. Brey refused to allow Liao to pursue his Ph.D., despite Liao having completed his research, because Liao's mentor was serving on Liao's dissertation committee. *Id.* ¶ 20. From September 2020 through August 2021, university leaders Dr. Browning and Dr. Brey denied Liao scholarship funds and employment, citing a lack of funding. *Id.* ¶¶ 24, 77, 93. This employment ice-out included demands by Dr. Brey and Dr. Browning that Liao be terminated from a Teaching Assistant position with the Department of Chemistry after he sought a position there. *Id.* ¶¶ 26, 27, 41-42. On an unknown date, Dr. Browning also allegedly demoted Liao from Teaching Assistant II to Teaching Assistant I[2] and paid him for that role at a rate below the university-mandated minimum wage of $14 an hour. *Id.* ¶¶ 52, 97-98. Also on an unknown date, Dr. Brey instructed all the faculty in Liao's research department to stop speaking with Liao regarding his discrimination claims and shared Liao's mentor's research data with Liao in violation of federal regulations. *Id.* ¶¶ 19, 46. Between December 2020 and sometime in 2021, UTSA administrators Dr. Ambika Mathur and Mr. Carlos Martinez—the latter UTSA President Dr. Taylor Eighmy's Chief of Staff—allegedly tricked Liao into paying over $5,000 to the university and threatened Liao with deportation if he did not comply. *Id.* ¶¶ 48-50. Finally, from May 2021 through August 2021, Drs. Browning and Brey allegedly removed Liao from UTSA research systems in retaliation for employment complaints he filed with UTSA's human resources department. *Id.* ¶¶ 42, 45, 93-94.

---

[2] Plaintiff Liao's complaint states that "Dr. Brey and Browning [sic] further retaliated against the plaintiff by not only demonstrating [sic] the plaintiff from Teaching Assistant II to Teaching Assistant I, but also underpaid the plaintiff." Dkt. No. 38 ¶ 97. The Court reads "demonstrating" to mean "demoting" based on context and believes this to be a scrivener's error.

Liao, according to the live complaint, alerted UTSA several times to the discrimination and retaliation perpetuated against him. Between 2019 and 2020, Liao allegedly reported to the Associate Dean of Administration and Graduate Studies at the College of Engineering that Dr. Brey threatened Liao's access to funding. *Id.* ¶ 17. The Associate Dean took no action to intervene. *Id.* Throughout 2020, Liao reached out to Student Advisor Amina Qutub and two department professors, requesting help pursuing his Ph.D. and employment, but Dr. Brey allegedly instructed them not to respond. *Id.* ¶¶ 25, 47. Liao further reported the alleged discrimination and retaliation across various offices at UTSA, including the UTSA student affairs office, graduate school, research integrity office, registrar's office, financial services department, Office of Institutional Compliance and Risk Services, Provost & Senior Vice President of Academic Affairs, and the UTSA President, none of whom helped. *Id.* ¶¶ 6-11, 21. Liao allegedly made reports to outside authorities as well, including multiple complaints with both the United States Department of Education Office for Civil Rights, *id.* ¶¶ 38-39, and Equal Employment Opportunity Commission. *Id.* ¶ 72.

Finally, the live complaint endeavors to provide a similarly situated comparator to Liao by identifying Zahra Rajabi, a non-Taiwanese female Ph.D. student who UTSA hired as a teaching assistant and who shared Liao's Ph.D. mentor. *Id.* ¶¶ 29, 64, 75, 80. UTSA never cut Rajabi's access to funding or research, and she was able to maintain her employment as a teaching assistant.[3] *Id.* All this despite Rajabi having difficulty verifying her bachelor's degree to

---

[3] In his response, Liao also names three other non-Taiwanese Ph.D. students who did not suffer retaliation or discrimination by UTSA and lists Rajabi's nationality as Iranian. Dkt. No. 43 at 4-5. However, in the Fifth Circuit, courts considering a Rule 12(b)(6) motion "must generally examine only the complaint and any attachments." *Adrade v. Teichroeb*, 341 F. Supp. 3d 681, 685 (N.D. Tex. 2018) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)). There are exceptions to this rule, none of which Liao's response meets. *See Collins*, 244 F.3d at 498-99. The Court therefore declines to consider comparators other than Rajabi or the

UTSA. *Id*. ¶ 19. Liao further alleges that he was the only UTSA Ph.D. student that Dr. Brey and

Dr. Browning refused to hire and the only student to lose access to the UTSA research database

between May 2021 and August 2021. *Id*. ¶ 93. He was also the only Taiwanese Ph.D. student in

the department. *Id*. ¶ 75.

For relief, Plaintiff Liao asks the Court for declaratory and injunctive relief, the return of

lost wages, tuition, and scholarship funds, compensatory damages, attorney's fees, and any other

appropriate relief. *Id*. at 22.

## Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although a

complaint "does not need detailed factual allegations," the "allegations must be enough to raise a

right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations pleaded

must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S.

at 678.

In reviewing a motion to dismiss under Rule 12(b)(6), a court "accepts all well-pleaded

facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Const. Co.

v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quotation marks omitted). A

court, however, need not credit conclusory allegations or allegations that merely restate the legal

---

fact that Rajabi is an Iranian national. In any event, the other comparators and Rajabi's
nationality are not dispositive to the Court's analysis.

elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678).

**Analysis**

Plaintiff Liao's claims of sex-based discrimination and retaliation do not survive Defendant UTSA's Motion to Dismiss. Further, because Liao did not clarify whether he received his Ph.D. from UTSA, claims seeking relief on that basis are not properly before the Court and should be dismissed. Liao's race-based or national-origin-based Title VI discrimination, hostile environment, and retaliation claims survive UTSA's motion. So too do claims for race-based or national-origin-based Title VII discrimination and retaliation, because Liao has met the District Court's requirements and adequately pleaded each.

**A.      Plaintiff Liao's Claims of Sex-Based Discrimination and Claims Seeking Injunctive Relief Should be Dismissed.**

Liao's claims alleging sex-based discrimination fail because he has not pleaded facts sufficient to support a claim. Further, Liao's claims for injunctive relief, which are based on his not receiving a Ph.D., are dismissed because Liao did not clarify his complaint on this issue as ordered by the District Court.

**1.      *The sex-based-discrimination allegations fail to state a claim.*** At the hearing and while represented by his former counsel, Liao dropped his sex-based-discrimination claims. Dkt. No. 36 at 6:15-25, 9:17-10:3. Liao, however, appears to have attempted to resurrect these claims by mentioning them in three places in his live complaint. First, Liao alleges that UTSA engaged in "the action of retaliation by gender discrimination because [a] female student who was working in the same job got paid more than 2,000 US dollars per month." Dkt. No. 38 ¶ 52. Next, he alleges that "refusing to pay [Liao's] tuition and fee[s]" while paying them on behalf of "female graduate student Zahra Rajabi," "exemplified Dr. Browning's gender

discrimination against [Liao] for [Rajabi's] and Dr. Brey's personal benefit." *Id*. ¶ 64. Finally, Liao makes the blanket statement that "Defendant UTSA failed to take all reasonable and necessary steps to eliminate gender discrimination from the workplace and to prevent it from occurring in the future." *Id*. ¶ 65.

The claims should be dismissed based on counsel's prior concession. *See, e.g.*, *Anokwuru v. City of Houston*, 990 F.3d 956, 967 (5th Cir. 2021) (courts can dismiss claims *sua sponte* under Rule 12(b)(6) when the plaintiff is on notice of the argument for dismissal and has had an opportunity to respond). But even assuming Liao is somehow not bound by his prior counsel's concessions, the claims fail regardless, even though UTSA doesn't squarely target them in its motion. *See Chhim*, 836 F.3d at 469 (internal citation omitted). These claims, which at this point surely represent Liao's best effort at pleading his case, involve mere conclusory statements lacking specific allegations sufficient to support a claim that UTSA discriminated against Liao based on sex.  Consequently, Liao's sex-based discrimination claims should be dismissed.

     **2.**    *The claim for an injunction granting a Ph.D. should be dismissed.* At the prior hearing, the District Court ordered Liao to clarify whether he received his Ph.D. from UTSA. Dkt. No. 38 at 12:8-13:21. The District Court warned Liao that "if a new pleading doesn't get filed . . . that cures things [including specifying whether Liao received his Ph.D.], this is the last shot and there will be a dismissal after that point." *Id*. at 16:5-8. Liao's live complaint does not specify whether he received his Ph.D., and therefore any claims seeking injunctive relief on that basis should be dismissed.

    **B.**    **Liao's Remaining Title VI Claims Survive UTSA's Motion.**

Liao's Title VI discrimination, hostile environment, and retaliation claims survive Defendant UTSA's Motion to Dismiss because Liao satisfied the District Court's instructions

related to those claims, and he alleged facts specific enough to satisfy Title VI pleading requirements for each of the three types of Title VI claims pleaded.

1.     *Liao complied with the District Court's order to cure his Title VI claims.* At the prior hearing, the District Court ordered that any amended complaint must clarify whether Liao reported his alleged discrimination to an appropriate authority Dkt. No. 36 at 11:20-12:6. Liao satisfied that requirement, at least at the pleading stage. The live complaint alleges that Liao reported the discrimination to at least six individuals at UTSA, ranging from Student Advisor Amina Qutub to the UTSA President, and to at least five UTSA offices, including student affairs and the Office of Institutional Compliance and Risk Services. *See* Dkt. No. 38 ¶¶ 6-11, 17, 21 & 25. Although a significant number of these reports, as alleged, were made outside the relevant period, some were made during the relevant period of December 11, 2020, to October 7, 2021. *See, e.g.*, *id.* ¶¶ 7, 10, 11, 21. Liao also alleged reporting the discrimination to two outside authorities, the United States Department of Education Office for Civil Rights, *id.* ¶¶ 38-39, and Equal Employment Opportunity Commission. *Id.* ¶ 72. His allegations in this regard are often general and may at times fail to link what specifically was reported, when precisely it was reported, and to whom exactly it was reported. After its repeated warnings, the District Court might conclude that these allegations are insufficient. But at this stage, the Court concludes that Federal Rule of Civil Procedure 8 has been satisfied; Liao, however, will have signifcant work to do in clarifying his reporting at the summary judgment phase.

2.     *The live complaint sufficiently pleads Title VI educational discrimination, hostile environment, and retaliation claims.* Title VI of the Civil Rights Act of 1964 states that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under

any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. It is not contested here that UTSA received Federal financial assistance. While private individuals can sue to enforce Title VI, *Alexander v. Sandoval*, 532 U.S. 275, 279 (2001), a plaintiff must prove discriminatory intent to receive compensatory damages. *Canutillo Indep. Sch. Dist. v. Leija*, 11 F.3d 393, 397 (5th Cir. 1996). Finally, "[p]laintiffs in these types of cases may rely on either direct or circumstantial evidence, or both." *Bisong v. Univ. of Houston*, 493 F. Supp. 2d 896, 905 (S.D. Tex. 2007) (citing *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995)). No direct evidence of discrimination is at issue here.

In analyzing circumstantial evidence, courts apply the *McDonnell Douglas* burden-shifting analysis, which "requires the plaintiff to present evidence establishing . . . a *prima facie* case," which in turn creates a presumption of discrimination. *Id*. (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973)). To establish a *prima facie* case, "the plaintiff must demonstrate that: (1) she belongs to a protected class, (2) her performance met the university's legitimate expectations, [3] she suffered an adverse action; and (4) either that others not in her protected class received more favorable treatment under similar circumstances or that she" otherwise suffered an adverse action because of her race or national origin. *Id*. at 906 (citing *McDonnell Douglas*, 411 U.S. at 802).

### Plaintiff Liao properly pleaded Title VI race or national-origin discrimination.

To have a viable Title VI discrimination claim, a plaintiff must "plead facts in support of intentional discrimination." *Price ex rel. Price v. La. Dep't of Educ.*, 329 F. App'x 559, 561 (5th Cir. 2009). Relief is "predicated upon notice to an 'appropriate person' and an opportunity to rectify any violation." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998) (applying the "appropriate person" requirement in the Title IX context, on the basis that Title IX

operates in the same manner as Title VI). "An 'appropriate person' . . . is, at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination." *Id*. Discrimination based on immigration status alone does not create a viable Title VI race or national-origin-discrimination claim. *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 95 (1973) (noting, "[a]liens are protected from illegal discrimination under the [Civil Rights] Act, but nothing in the Act makes it illegal to discriminate on the basis of citizenship or alienage").

Liao has pleaded sufficient facts in support of his Title VI discrimination claim. Liao pleaded a protected class as a Taiwanese national or Asian. Dkt. No. 38 ¶ 20.  He pleaded that his performance met UTSA's expectations in that he was recruited to attend the university, was offered employment as a teaching assistant, and apparently reached the final stages of obtaining a Ph.D. *Id*. ¶¶ 1, 19-20. And, according to the live complaint's allegations, Liao was repeatedly harassed by UTSA. For example, UTSA's Dr. Brey told Liao that Liao "ha[d] no right to refuse" to run experiments violative of safety and employment protocols due to "his position as [an] international student" in need of job support. *Id*. ¶ 23. UTSA administrators also allegedly tricked Liao into paying over $5,000.00 to UTSA and threatened him with deportation if he did not comply. *Id*. ¶¶ 48-50. Finally, Liao provides a link in his pleadings between these UTSA actions and Liao's protected status because he points to a non-Taiwanese, Ph.D. student, Zahra Rajabi, who he alleges did not similarly suffer at the hands of UTSA. *Id*. ¶¶ 29, 64, 75, 80. Indeed, although Rajabi shared Liao's Ph.D. mentor, UTSA did not force her to run allegedly unsafe experiments or pay $5,000 under threat of deportation. *See id*. At the motion to dismiss stage, this suffices.

Plaintiff Liao also reported this alleged discrimination to multiple appropriate persons, none of whom took corrective action. Liao reported the discrimination to at least five individuals

and six UTSA offices. *Id*. ¶¶ 6-11, 17, 21, 25, & 27. Among those to whom Liao reported, several appear to have had the authority to take corrective measures and yet according to the complaint chose not to, including UTSA's president, student affairs office, research integrity office, and various research deans. *Id*. Again, it is not entirely clear precisely what was reported, when it was reported, and to whom; the reporting allegations are often general and generic. However, because the Court draws inferences in favor of Liao at this stage, his allegations pass muster, albeit only by the slightest of margins.

Defendant UTSA's arguments for a contrary conclusion fail to persuade. UTSA argues that Liao did not "allege specific facts of intentional discrimination" and instead only made "various blanket allegations of discrimination and retaliation throughout his Complaint without stating what was discriminatory or retaliatory about UTSA or any specific individual's actions." Dkt. No. 41 at 6. UTSA specifically takes issue with Liao not "alleg[ing] that he was not paid tuition and fees *because of* his race or national origin." *Id*. Although this argument has some persuasive force, Liao does in fact point to specific threats and coercive actions UTSA took against him—like being ordered to violate lab protocols and required to pay $5,000 under threat of deportation—that UTSA did not visit upon at least one non-Taiwanese Ph.D. student with similar program status. Dkt. No. 38 ¶¶ 29, 64, 75, 80.

UTSA also argues that Liao "fails to allege he notified an authorized official at UTSA who was deliberately indifferent." *Id*. at 7. Thus, UTSA takes issue with Liao not "stating what facts, if any, [he] reported to" UTSA officials, and that he "did not allege any 'actual knowledge' [among UTSA officials] of discrimination that he reported." *Id*. However, Liao's complaint does enough. It does, on occasion, allege specific facts he reported. For example, Liao reported to the Associate Dean of Administration and Graduate Studies at the College of Engineering that

UTSA employee Dr. Brey threatened Liao's access to funding. Dkt. No. 38 ¶ 17. Liao also alleged that Dr. Brey instructed other UTSA administrators and professors not to respond to Liao's requests to continue with his Ph.D. and employment. *Id.* ¶¶ 25-27. While Liao's complaint does not detail the exact facts relayed to these "appropriate persons," Liao's pro se amended complaint sufficiently alleges that he reported the specific alleged instances of discrimination. These communications at least (just barely) plead a *prima facie* case of discrimination.

*Liao properly pleaded and supported a Title VI racially hostile environment claim.* A Title VI racially "hostile environment claim arises from the 'cumulative effect of individual acts,' some of which 'may not be actionable on [their] own." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 583-84 (5th Cir. 2020) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002)). These acts must amount to abuse that is "'so severe, pervasive and objectively offensive' that it deprive[s a plaintiff] of an educational benefit" provided by the school. *Id.* at 584 (quoting *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999)). An educational institution "is liable for that harassment if it knew about the abuse and was deliberately indifferent." *Id.* (citation omitted). Especially probative in this context are instances where an educator or administrator treats a student "differently from students" who do not share a Title VI protected trait. *Id.* Finally, while "the harassment must be more than the sort of teasing and bullying that generally takes place in schools," "being shamed and humiliated on the basis of one's race" can raise a claim. *Fennell v. Marion Indep. Sch. Dist.*, 804 F. 3d 398, 409 (5th Cir. 2015) (internal citations and quotations omitted).

Here, taking Liao's allegations as true and drawing all reasonable inferences in his favor, he has pleaded a claim. Liao alleges a pattern of actions taken by UTSA on account of his

protected status that lasted for nearly ten months and included coercion to violate lab protocols, fraudulent payments, and threats of dire immigration consequences for noncompliance. *See* Dkt. No. 38 ¶¶ 17, 21, 23-24, 27, 48-50, 76, 77, 93, 97-98. Such threats and actions, taken as true at this stage, are severe and offensive, because they amounted to Liao "being shamed and humiliated on the basis of [his] race." *Fennell*, 804 F. 3d at 409. Further, UTSA's alleged actions singled Liao out among his peers and prevented him from pursuing gainful student employment and conducting research, and the actions also stalled his education and deprived him of an educational benefit. *See e.g.*, Dkt. No. 38 ¶¶ 20, 27, 41-42. As detailed above, Liao brought his harassment to the attention of multiple professors, administrators, and offices at UTSA, none of whom stepped in to support Liao. *See e.g.*, *id.* ¶¶ 6-11, 21, 25, 47. Liao also points the similarly situated Zahra Rajabi who did not suffer the same discriminatory actions or adverse educational consequences. *Id.* ¶¶ 29, 64, 75, 80; Dkt. No. 45 at 4-5.

Defendant UTSA argues that Liao did not state a Title VI racially hostile environment claim because such claims are "usually premised on student-on-student harassment" and that Liao did "not allege any facts showing harassment about his race or national origin, who had actual knowledge of this harassment, that UTSA had any control over a harasser, or that UTSA was deliberately indifferent." Dkt. No. 41 at 8. But student-on-student harassment is just one way that a plaintiff can bring a racially hostile environment claim; such claims can be premised on the actions of administrators as well. *See Sewell*, 974 F.3d at 583-84. Liao pleaded specific facts showing harassment based on his race or national origin, that he alerted UTSA administrators and offices, and that UTSA did not intervene. UTSA's generic argument that the pleading is insufficient does not convince the Court, although more targeted, cogent briefing on this topic might convince the Court otherwise.

*Liao properly pleaded a Title VI retaliation claim, if such claims are cognizable in the Fifth Circuit.* The Fifth Circuit has not decided whether Title VI retaliation claims are cognizable. *Bhombal v. Irving Indep. Sch. Dist.*, 809 F. App'x 233, 238 (5th Cir. 2020). It has, however, supported the Fourth Circuit's requirements for such a claim, specifically: "(1) that [the plaintiff] engaged in a protected activity; (2) that [the institutional defendant] took a material adverse . . . action against [the plaintiff], [sic] and (3) that a causal connection existed between the protected activity and the adverse action." *Id.* (citing *Peters v. Jenney*, 327 F.3d 307, 320 (4th Cir. 2003)). "[T]o show 'protected activity,' the plaintiff in a Title VI retaliation case need 'only . . . prove that he opposed an unlawful . . . practice which he reasonably believed had occurred or was occurring.'" *Peters*, 327 F.3d at 320-21 (quoting *Bigge v. Albertsons, Inc.*, 894 F.2d 1497, 1503 (11th Cir. 1990)).

Taking Liao's well-pleaded allegations as true, he has met these requirements. Liao engaged in various forms of protected activity. These include resisting UTSA's attempts to pressure him to perjure himself in Title IX and Title VII investigations. Dkt. No. 38 ¶¶ 14-16, 90. They also include making complaints to the Equal Opportunity Employment Commission as well as UTSA administrators and staff regarding the alleged race or national-origin discrimination he suffered at the hands of Drs. Brey and Browning. *See*, *e.g. id.* ¶¶ 14-17, 19, 25, 42, 45-47, 90, 93-94. The complaint alleges that UTSA took the material adverse action of removing Liao from UTSA research systems and restricting his job responsibilities after he reported his treatment to the UTSA human resources department and EEOC. *Id.* ¶¶ 42, 45, 93-94. Finally, Liao pleaded that UTSA took these actions in direct retaliation for his outcry. *Id.* ¶ 95.

UTSA argues that "[p]laintiff's Title VI retaliation claim . . . fails because Plaintiff fails to allege that he suffered a material adverse action and that a causal link exists between the

protected activity and the adverse action." Dkt. No. 41 at 9. Here again, UTSA provides the kernel of what might ultimately be a persuasive argument. But the argument, as presented, is too generic and vague to persuade. On the Court's admittedly very generous reading of Liao's live complaint, Liao sufficiently pleaded both a material adverse action and a causal link. Fleshed-out, fully realized briefing might produce a different result later in the case.

C.    **Liao's Title VII Employment Discrimination and Retaliation Claims Survive UTSA's Motion to Dismiss.**

Liao's Title VII employment-discrimination and retaliation claims survive UTSA's Motion to Dismiss because he satisfied the District Court's instructions regarding these claims in his amended complaint and alleged sufficient specific facts. Once again, however, this is a close call.

1.    *Liao satisfied the District Court's order to cure his Title VII claims.* At the prior hearing, the District Court ordered Liao to meet three requirements for his amended complaint's Title VII claims. Liao complied with the order.

First, the District Court ordered Liao "to make it clear . . . that his employment was tied to the dissertation that he was working on." Dkt. No. 36 at 5:21-6:1. Liao's amended complaint clarified that his "admission contract with defendant UTSA included first year employment plus renewal and non-conditional scholarship to obtain a Ph.D.," Dkt. No. 38 ¶ 1, that the contract required Defendant UTSA to "hire [Liao] as a teaching assistant to support [his] PhD [sic] study," *Id*. ¶ 19, and that "[a]ccording to the contract, [Liao] should be hired either [as a] teaching assistant by the department or [as a] research assistant by [his] mentor." *Id*. ¶ 22.

Second, the District Court ordered Liao "to make sure [he is] clear about what's background material[]" and to separate background information regarding a previously filed Department of Energy complaint and the prior firing of his dissertation advisor that is irrelevant

to his race-based or national-origin-based discrimination claims. Dkt. No. 36 at 6:3-12. Liao's amended complaint removed some irrelevant information and added some focus to his claims of discrimination under Title VI and Title VII, just meeting the second of the District Court's requirements.

Third and finally, the District Court ordered Liao "to make it clear . . . that based upon information and belief there were non-Taiwanese Ph.D. candidates in [a] similar department as [Liao] who were given the ability to work and get paid." *Id.* at 10:4-9. Liao met this requirement through his pleadings regarding non-Taiwanese Ph.D. candidate Zahra Rajabi, "who had previously worked in the same lab . . . and was offered a Teaching Assistant position in the same department." Dkt. No. 38 ¶ 75.

    **2.**    *Liao successfully pleaded Title VII race or national-origin-based employment discrimination and retaliation claims.* Title VII prohibits employment discrimination based on race, color, national origin, and sex. 42 U.S.C. § 2000e-2. It also prohibits retaliation for "making charges, testifying, assisting, or participating in enforcement proceedings." *Id.*    § 2000e-3.

    **Liao has sufficiently pleaded that he was an employee of UTSA.** As an initial matter, the Court must determine whether Liao was an employee of UTSA. "The basic premise of a Title VII case is that the plaintiff had an employment relationship with the defendant." *Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 9118, 926 (5th Cir. 2021). In the Fifth Circuit, courts apply a "hybrid economic realities/common law control" test to determine "whether an entity exercises enough control over an individual to qualify as his employer." *Id.* at 928-29 (citations omitted). As the Fifth Circuit has explained,

    [w]hen examining the control component, we focus on the right to hire and fire, the right to supervise, and the right to set the employee's work schedule. The

> economic-realities component of the "hybrid economic realities/common law control test" focuses on who paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment.

*Id.* at 929 (internal citations omitted).

Here, taking the allegations in Plaintiff Liao's amended complaint as true, he has met the requirements of the "hybrid economic realities/common law control test." Regarding the economic-realities component, Liao pleaded that UTSA paid his salary, Dkt. No. 38 ¶¶ 52, 98, and set the terms and conditions of his employment through a contract. *See e.g.*, *id.* ¶¶ 1, 19.  As for control, Liao pleaded that UTSA fired him from a teaching-assistant position with the Department of Chemistry, *id.* ¶¶ 27, 93, set Liao's pay, *id.* ¶¶ 52, 98, controlled the types of experiments he ran in the lab, *id.* ¶ 23, and finally had to the power to demote him from Teaching Assistant II to Teaching Assistant I, *id.* ¶ 97.

UTSA is unconvincing in arguing Liao was not an employee. Citing *Washington v. Jackson State University*, 532 F. Supp. 2d 804, 811 (S.D. Miss 2006), UTSA urges that a "graduate assistant receiving an assistantship stipend is not an employee for Title VII purposes." Dkt. No. 41 at 10. *Washington* involved a plaintiff who had "never been an employee of the University" because "as a graduate student at the University, he received a graduate assistantship stipend" that "was not payment of wages to an employee." *Washington*, 532 F. Supp. 2d at 811. Here, in contrast, Liao pleaded facts showing he was an employee under the hybrid economic realities/ common law control test, including that he was paid a salary. Dkt No. 38 ¶¶ 52, 98. Moreover, Liao was able to apply for teaching-assistant positions within various departments, *id.* ¶ 26, which supports a reasonable inference that he was not on a fixed stipend. Consequently, dismissal of Liao's Title VII claims on the basis that his pleadings show he was not an employee of UTSA is not warranted.

   ***Liao stated a Title VII race or national-origin discrimination claim.*** To establish a *prima facie* case of discrimination in the Fifth Circuit, "the plaintiff must show that '(1) she is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) others similarly situated were more favorably treated.'" *Willis v. Coca Cola Enters., Inc.*, 445 F.3d 413, 420 (5th Cir. 2006) (quoting *Rutherford v. Harris Co., Tex.*, 197 F.3d 173, 184 (5th Cir.1999)). "[A] 'similarly situated' employee" is one "under 'nearly identical' circumstances, [who] was treated differently." *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 406 (5th Cir. 2005) (citing *Mayberry*, 55 F.3d at 1090.). The Fifth Circuit construes "nearly identical circumstances" narrowly. *See id.* (holding that employees who shared a manager and were caught stealing from their employer were not sufficiently similarly situated because the value of the items stolen and behavior after being caught were different).

   Liao has met the requirements to establish a *prima facie* Title VII claim. First, his protected class is his Asian race or national origin of Taiwanese. Dkt. No. 38 ¶ 20. Second, he was qualified for employment by UTSA, as evidenced by UTSA recruiting him to the university with a promise of employment as part of his Ph.D. studies and employing him as a teaching assistant. *Id.* ¶¶ 1, 97. Third, Liao suffered various adverse employment actions during the relevant period, including being threatened with deportation, *id.* ¶ 96, being paid less than the University-mandated minimum wage, *id.* ¶¶ 52, 97-98, and being terminated from his employment. *Id.* ¶ 27. Fourth, Liao alleges a similarly situated comparator in nearly identical circumstances, non-Taiwanese Ph.D. candidate Zahra Rajabi. *Id.* ¶ 75. According to the live complaint, Rajabi worked under the same Ph.D. mentor as Liao and "was offered a Teaching Assistant position in the same department." *Id.* ¶ 75. In fact, Rajabi had issues verifying her bachelor's degree to UTSA but was offered employment regardless. *Id.* ¶ 29.

UTSA argues that "Liao fails to allege he suffered an adverse action" because "it is unclear what actions, if any, were more than *de minimis* harms that Liao experienced as a PhD [sic] student at UTSA." Dkt. No. 41 at 11. The Court is not moved. Liao pleaded that he was threatened, terminated, and received less pay because of UTSA's actions, each of which is sufficient to support a *prima facie* claim. *See Muldrow v. City of St. Louis, Missouri*, 144 S. Ct. 967 (2024). UTSA also argues that Liao "fail[ed] to allege a similarly situated comparator outside his protected group [who] was treated more favorably," especially because he did "not allege that Rajabi is outside his protected group or how Rajabi is a sufficient comparator." *Id*. This argument also fails because while it is true that Liao did not plead Rajabi's nationality, he stated that he "was the only Taiwanese Ph.D. student in the Department," Dkt. No. 38 ¶ 75, meaning that Rajabi is a non-Taiwanese comparator. Further, Liao pleaded that Rajabi received preferential employment benefits, including being offered a job as a teaching assistant. *Id*. ¶ 64.

*Liao stated a Title VII race or national-origin-based retaliation claim.* To establish a *prima facie* case of retaliation under Title VII, a plaintiff must satisfy three elements: "(1) the employee engaged in [an] activity protected by Title VII; (2) the employer took [an] adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action." *Brazoria County, Tex. v. Equal Emp. Opportunity Comm'n*, 391 F.3d 685, 692 (5th Cir.2004) (emphasis and internal citations omitted). "Protected activities consist of (1) opposing any practice deemed an unlawful employment practice by [T]itle VII (the 'opposition clause') or (2) making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under [T]itle VII (the 'participation clause')." *Ellis v. Compass Grp. USA, Inc.*, 426 F. App'x 292, 296 (5th Cir. 2011) (internal citations omitted). An adverse employment action, meanwhile, is one "that a

reasonable employee would have found . . . materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

Liao has pleaded facts sufficient to satisfy all three elements. First, he engaged in protected activity under both the opposition and participation clauses by resisting UTSA's attempts to pressure him to perjure himself in Title VII investigations, and outcrying to the Equal Opportunity Employment Commission, UTSA administrators and staff regarding the perceived discrimination he suffered at the hands of Drs. Brey and Browning. *See, e.g.* Dkt. No. 38 ¶¶ 14-17, 19, 25, 42, 45-47, 90, 93-94. Second, UTSA took various material adverse actions, including removing Liao from UTSA research systems and restricting his job responsibilities after he reported his treatment to the UTSA human resources department. *Id.* ¶¶ 42, 45, 93-95. Third, Liao alleges these actions were taken in retaliation for his outcry, thus providing "a causal connection . . . between [Liao's] protected activity and the adverse employment action." *Brazoria County*, 391 F.3d at 692; *see also*, *id.*

## Conclusion

Defendant UTSA's Motion to Dismiss, Dkt. No. 41, should be **GRANTED in part and DENIED in part**. Plaintiff Liao's claims seeking relief for alleged sex-based discrimination under Title VII and asking for injunctive relief should be **DISMISSED**.  Liao's remaining Title VI and Title VII claims survive Defendant UTSA's Motion to Dismiss.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified

mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of the same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b).  The party shall file the objections with the clerk of the court and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

      **IT IS SO ORDERED.**

      **SIGNED this 20th day of August, 2024.**

      **RICHARD B.  FARRER**
      **UNITED STATES MAGISTRATE JUDGE**