**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| CHIH-KAI LIAO, | § | |
| *Plaintiff* | § | |
| | § | SA-22-CV-01359-XR |
| -vs- | § | |
| | § | |
| UNIVERSITY OF TEXAS AT SAN | § | |
| ANTONIO, | § | |
| *Defendant* | § | |

## ORDER ON REPORT AND RECOMMENDATION

On this date the Court considered United States Magistrate Judge Chestney's Report and Recommendation ("Recommendation") in the above-styled case, filed August 20, 2024 (ECF No. 46), recommending that Defendant's Motion to Dismiss Plaintiff's Fourth Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) (ECF No. 41) be **GRANTED in part and DENIED in part**. After careful consideration, the Court **ADOPTS in part and REJECTS in part** the Recommendation.

## BACKGROUND

This is a discrimination and retaliation case under Title VI and VII of the Civil Rights Act of 1964. Plaintiff Chih-Kai Liao ("Liao") alleges he suffered sex, and race and national origin discrimination, a racially hostile environment, and retaliation while a graduate student employed at the University of Texas at San Antonio ("UTSA"). Now on his Fourth Amended Complaint, Liao gets past the pleading hurdle on his key claims. But as the Magistrate Judge noted, Liao "has significant work to do" moving forward. ECF No. 46 at 9.

## I.    Factual Background[1]

Defendant UTSA recruited and offered Liao a fully funded position as a Ph.D. student, which Liao accepted. *Id*. ¶ 1. UTSA's offer provided Liao tuition and living support under an F-1 immigration visa, which restricted Liao's employment to opportunities within the university. *Id*. The germ of Liao's claims occurred between October 2019 and January 2020, when he was called to testify in various administrative and Title IX investigations against his Ph.D. advisor. *Id*. ¶¶ 14-16, 90. Members of UTSA's administration, according to Liao, pressured Liao to perjure himself in those proceedings and in so doing "link his mentor to any possible violations relate[d] to Title IX." *Id*. ¶ 14. Liao experienced a similar situation when called to testify in a Title VII investigation. *Id*. ¶ 90.

Because Liao refused to perjure himself, as Liao tells things, he suffered retaliation at the hands of UTSA. This occurred in December of 2019, when department chair Dr. Eric Brey threatened to restrict Liao's access to funding. *Id*. ¶¶ 17, 21. Then, in February of 2020, Dr. Brey forced Liao to run an experiment in violation of lab-safety protocols and outside the scope of Liao's employment. *Id*. ¶¶ 23, 76. When Liao protested, Dr. Brey told Liao that he "ha[d] no right to refuse and [should] think about his position as [an] international student" in need of job support. *Id*. ¶ 23.

Beyond these discrete acts, Liao alleges that Defendant UTSA retaliated or discriminated against him through acts that spanned longer periods of time, although the connection between these acts and Liao's protected status or any alleged protected activity is often difficult or impossible to discern from the complaint. From 2019 through 2021, Dr. Brey refused to allow Liao to pursue his Ph.D., despite Liao having completed his research, because Liao's mentor was serving on Liao's dissertation committee. *Id*. ¶ 20. From September 2020 through August 2021, university leaders Dr. Browning and Dr. Brey denied Liao scholarship funds and employment, citing a lack of funding. *Id*. ¶¶ 24, 77, 93. This employment ice-out included demands by Dr. Brey and Dr. Browning that Liao be terminated from a Teaching Assistant position with the Department of Chemistry after he sought a position there. *Id*. ¶¶ 26, 27, 41-42. On an unknown date, Dr. Browning also allegedly demoted Liao from Teaching Assistant II to Teaching Assistant I and paid him for that role at a rate below the university-mandated minimum wage of $14 an hour. *Id*. ¶¶ 52, 97-98. Also on an unknown date, Dr. Brey instructed all the faculty in Liao's research department to stop speaking with Liao regarding his discrimination claims and shared Liao's mentor's research data with Liao in violation of federal regulations. *Id*. ¶¶ 19, 46. Between December 2020 and sometime in 2021, UTSA administrators Dr. Ambika Mathur and Mr. Carlos Martinez—the latter UTSA President Dr. Taylor Eighmy's Chief of Staff—allegedly tricked Liao into paying over $5,000 to the university and threatened Liao with deportation if he did not comply. *Id*. ¶¶ 48-50. Finally, from May 2021 through August 2021, Drs. Browning and Brey allegedly removed Liao from UTSA research

---

[1] This background constitutes the Magistrate Judge's summary of the allegations made by Plaintiff in his latest complaint. ECF No. 46 at 3–6. UTSA argues that even these allegations are insufficient as a matter of law  to state a claim. Liao does not object to any part of the Recommendation. ECF No. 53.

systems in retaliation for employment complaints he filed with UTSA's human resources department. *Id*. ¶¶ 42, 45, 93-94.

Liao, according to the live complaint, alerted UTSA several times to the discrimination and retaliation perpetuated against him. Between 2019 and 2020, Liao allegedly reported to the Associate Dean of Administration and Graduate Studies at the College of Engineering that Dr. Brey threatened Liao's access to funding. *Id*. ¶ 17. The Associate Dean took no action to intervene. *Id*. Throughout 2020, Liao reached out to Student Advisor Amina Qutub and two department professors, requesting help pursuing his Ph.D. and employment, but Dr. Brey allegedly instructed them not to respond. *Id*. ¶¶ 25, 47. Liao further reported the alleged discrimination and retaliation across various offices at UTSA, including the UTSA student affairs office, graduate school, research integrity office, registrar's office, financial services department, Office of Institutional Compliance and Risk Services, Provost & Senior Vice President of Academic Affairs, and the UTSA President, none of whom helped. *Id*. ¶¶ 6-11, 21. Liao allegedly made reports to outside authorities as well, including multiple complaints with both the United States Department of Education Office for Civil Rights, *id*. ¶¶ 38-39, and Equal Employment Opportunity Commission. *Id*. ¶ 72.

Finally, the live complaint endeavors to provide a similarly situated comparator to Liao by identifying Zahra Rajabi, a non-Taiwanese female Ph.D. student who UTSA hired as a teaching assistant and who shared Liao's Ph.D. mentor. *Id*. ¶¶ 29, 64, 75, 80. UTSA never cut Rajabi's access to funding or research, and she was able to maintain her employment as a teaching assistant.[2] *Id*. All this despite Rajabi having difficulty verifying her bachelor's degree to UTSA. *Id*. ¶ [2]9. Liao further alleges that he was the only UTSA Ph.D. student that Dr. Brey and Dr. Browning refused to hire and the only student to lose access to the UTSA research database between May 2021 and August 2021. *Id*. ¶ 9[5]. He was also the only Taiwanese Ph.D. student in the department. *Id*. ¶ 75.

For relief, Plaintiff Liao asks the Court for declaratory and injunctive relief, the return of lost wages, tuition, and scholarship funds, compensatory damages, attorney's fees, and any other appropriate relief. *Id*. at 22.

## II.    Procedural Background

---

[2] In his response to UTSA's Motion to Dismiss, Liao named three other non-Taiwanese Ph.D. students who did not suffer retaliation or discrimination by UTSA and lists Rajabi's nationality as Iranian. ECF No. 43 at 4-5. In the Fifth Circuit, courts considering a Rule 12(b)(6) motion "must generally examine only the complaint and any attachments." *Adrade v. Teichroeb*, 341 F. Supp. 3d 681, 685 (N.D. Tex. 2018) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)). There are exceptions to this rule, but the Magistrate Judge concluded that none applied to Liao. ECF No. 46 at 5–6. The Court agrees and declines to consider comparators other than Rajabi or the fact that Rajabi is an Iranian national.

Liao filed his initial Complaint in December 2022. ECF No. 2. After multiple iterations that resulted in other claims being dismissed with prejudice, the Court held a status conference and hearing on UTSA's motion to dismiss the Third Amended Complaint. ECF No. 36. At the hearing, the Court dismissed without prejudice Liao's claims and ordered him to plead certain facts to cure identified deficiencies. *See* ECF No. 36; Text Order, Oct. 19, 2023. Proceeding *pro se*, Liao filed his Fourth Amended Complaint ("FAC")—the live pleading—on December 18, 2024. ECF No. 38. The FAC asserts claims under Title VI for (i) race or national origin discrimination, (ii) a racially hostile environment; and (iii) retaliation, and claims under Title VII for (i) sex-discrimination, (ii) race or national origin discrimination, and (iii) retaliation.

UTSA moved to dismiss under Rule 12(b)(6), arguing that Liao failed to allege specific facts to support his claims. On August 20, 2024 the Magistrate Judge issued the Recommendation. ECF No. 46. The Magistrate Judge recommended that Liao's claims for sex- discrimination and for injunctive relief related to Liao's Ph.D. be dismissed,[3] but that that his remaining claims—just barely—should survive.

UTSA filed timely objections, ECF No. 48, which track the arguments in its motion to dismiss, ECF No. 41. UTSA claims that Liao failed to plead particular allegations to support his claims and that some of his allegations "are absurd and simply not plausible." ECF No. 48 at 4.[4]

---

[3] Because Liao did not object to the Recommendation that the Title VII sex discrimination claim be dismissed, clear error review applies, and the Court disposes of this in short order. Dismissal of Liao's sex-discrimination claims is not contrary to law because it was based on counsel's prior concession, or in the alternative that Liao's allegations are merely conclusory. *Id.* at 7–8. While the FAC does not specify that Liao seeks injunctive relief for a Ph.D, *see* ECF No. 38 at 20 (seeking an injunction "restraining" UTSA "from further engaging in discriminatory and retaliatory actions" against Liao), to the extent he does, dismissal is appropriate because Liao does not plead whether he has received his Ph.D from UTSA, even after this Court warned that "there will be a dismissal" if he failed to cure this deficiency. ECF No. 36, Hearing Transcript, at 16:5–8.

[4] UTSA argues that Liao's new facts should not be credited because they appear for the first time in the FAC, *after* Liao's attorney withdrew. But "'[a]n amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading.'" *In re R.E. Loans, L.L.C.*, 553 F. App'x 453, 456 (5th Cir. 2014) (quoting *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994)). The Court does not discredit new facts in the FAC on this basis alone.

It argues that the Magistrate Judge "improperly simplified" the Title VI and VII pleading standards and was "too generous in its inferences." *Id.* at 6–7. UTSA also raised the prospect that Title VI retaliation claims are not cognizable in the Fifth Circuit. *Id.* at 7.

Liao was given an extension of time to respond due to his change in address. ECF No. 51. On October 9, 2024, Liao timely responded and did not object to the Recommendation. ECF No. 53.

<b>DISCUSSION</b>

**I.**    <u>**Legal Standard**</u>

**A.   Standard of Review of Magistrate Judge's Recommendation**

A party may serve and file objections to a Report and Recommendation within fourteen days. FED. R. CIV. P. 72(a), (b)(2). "Parties filing objections must specifically identify those findings objected to. Frivolous, conclusive [sic] or general objections need not be considered by the district court." *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982), *overruled on other grounds by Douglass v. United States Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

Courts must review *de novo* any of the Magistrate Judge's conclusions to which a party has specifically objected. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). Any sections that were not objected to are reviewed for clear error to determine whether they are contrary to law. *Id.*; *see also United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989), *cert. denied*, 492 U.S. 918 (1989). But objections that are conclusory, made without any reasoning or any supporting authority, need not be considered by the court. *See Nettles*,

677 F.2d at 410 n.8; *McCall v. United States*, No. MO:07-CR-00096-RAJ, 2013 WL 12406618, at *20–21 (W.D. Tex. Mar. 20, 2013).

**B.   Rule 12(b)(6) Standard**

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 603 (N.D. Tex. Feb. 3, 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155,* 681 F.3d 614, 617 (5th Cir. 2012)).

All factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the plaintiff. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that courts should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions").

When reviewing a *pro se* plaintiff's complaint, the Court must construe the allegations liberally, holding the *pro se* to less stringent pleading standards than those applicable to lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).[5]

## ANALYSIS

Because UTSA generally objects to the entirety of the Magistrate Judge's recommendation that Liao's Title VI and Title VII claims survive, the Court applies a *de novo* standard of review, unless otherwise stated.

### I.  Discrimination Under Title VI

Title VI of the Civil Rights Act of 1964 states "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Title VI "seek[s] to stamp out discrimination in programs receiving federal funds and ensure that federal resources do not support discriminatory practices." *Sewell v. Monroe Cty. Sch. Bd.*, 974 F.3d 577, 583 (5th Cir. 2020). The essential elements of a Title VI discrimination claim are (1) there is race or national origin discrimination, and (2) the entity engaged in discrimination is receiving federal financial assistance.[6] *See Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio,* 40 F.3d 698, 706 n. 9 (5th Cir. 1994). While discrimination based on immigration status alone does not create a viable Title VI race or national-origin-discrimination claim, *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 95 (1973),

---

[5] While currently *pro se*, Liao was represented by counsel throughout the entirety of the proceedings, including the prior (unsuccessful) versions of his complaint. While the Court gives Liao the benefit of the doubt, it does not strain to make inferences for him.

[6] There is no dispute that UTSA received Federal financial assistance.

Title VI "prohibits discrimination on the basis of citizenship whenever it has the purpose or effect of discriminating on the basis of national origin." *Id.* at 92.

Private individuals can sue to enforce Title VI, *Alexander v. Sandoval*, 532 U.S. 275, 279 (2001), but a plaintiff must prove discriminatory intent to receive compensatory damages. *Canutillo Indep. Sch. Dist. v. Leija*, 11 F.3d 393, 397 (5th Cir. 1996). To establish discriminatory intent, a plaintiff must "plead facts in support of intentional discrimination." *Price ex rel. Price v. La. Dep't of Educ.*, 329 F. App'x. 559, 561 (5th Cir. 2009) (per curiam) (citing *Sandoval*, 532 U.S. at 281); *see also Sandoval*, 532 U.S. at 280 ("'Title VI itself directly reach[es] only instances of intentional discrimination.'") (quoting *Alexander v. Choate*, 469 U.S. 287, 293 (1985)). Intentional discrimination means that a decisionmaker acted "at least in part" with a discriminatory purpose. *Personnel Adm'r of Mass. V. Feeney*, 442 U.S. 256, 279 (1979). A complaint that fails to "provide specific allegations of acts that were taken with discriminatory intent" does not state a claim for Title VI discrimination. *Muthukumar v. Univ. of Tex. at Dallas,* No. 3:10–CV–0115–B, 2010 WL 5287530, at *5 (N.D. Tex. Dec. 27, 2010).

Plaintiffs can rely on both direct and circumstantial evidence to plead a Title VI discrimination claim. "Direct evidence is evidence that, if believed, proves the fact ... without inference or presumption [and] . . . includes any statement or document that shows on its face that an improper criterion served as a basis for the adverse employment action." *Harry v. Dall. Hous. Auth.*, 662 F. App'x 263, 266 (5th Cir. 2016) (per curiam) (citation omitted). When direct evidence is lacking, courts may use the *McDonnell Douglas* factors as a helpful reference "to frame the analysis" to determine whether a plaintiff has been discriminated against *because* of a protected characteristic. *Hamilton v. Dallas County*, 79 F.4th 494, 502 n. 45 (5th Cir. 2023) (Title VII); *see Gilani v. Univ. of Texas S.W. Medical Center*, 3:21-CV-1461-N, 2023 WL 2518811 (N.D. Tex.

Mar. 13, 2023) (same for Title VI). Under this approach, a plaintiff establishes a prima facie case of intentional discrimination by showing that (1) he belongs to a protected class, (2) his performance met the university's legitimate expectations, (3) he suffered an adverse action; and (4) either that others not in his protected class received more favorable treatment under similar circumstances or that he otherwise suffered an adverse action because of his race or national origin. *See Bisong v. Univ. of Houston*, 493 F. Supp.2d 896, 906 (S.D. Tex. 2007) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

But the Fifth Circuit has cautioned that a plaintiff need not establish each prong of the prima facie test at the pleading stage. *See Raj v. La. State Univ*, 714 F.3d 322, 331 (5th Cir. 2013) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–12) (2002)). This would be error "by improperly substituting an 'evidentiary standard' for a 'pleading requirement.'" *Id.* Likewise, it is "not necessary" to plead a similarly situated individual at the pleading stage. *See Jenkins v. City of Dallas, Texas*, 717 F.Supp.3d 528, 537 (N.D. Tex. 2024); *Cicalese v. Univ. of Texas Medical Branch*, 924 F.3d 762, 768 (5th Cir. 2019) ("scrutinizing" whether fellow employees were "really 'similarly situated' . . . [is] more suited to the summary judgment phrase). What matters is whether a plaintiff has pleaded "sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016).

Additionally, in cases that do not involve an official policy, damages under Title VI are "predicated upon notice to an 'appropriate person' and an opportunity to rectify any violation." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998) (applying the "appropriate person" requirement in the Title IX context, because Title IX operates in the same manner as Title

Case 5:22-cv-01359-XR   Document 54   Filed 10/23/24   Page 10 of 20


VI). "An 'appropriate person' . . . is, at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination." *Id*.

### A. Liao's Discrimination Claims Survive

Assuming there is no direct evidence of discrimination, the Court adopts *McDonnell Douglas* framework to guide its inquiry. While a close call, the Court agrees with the Magistrate Judge.

**Discrimination.** Liao has pleaded a protected class as a Taiwanese national or Asian, ECF No. 38 ¶ 20, and that his performance met UTSA's expectations in that he was recruited to attend the university, was offered employment as a teaching assistant, and apparently reached the final stages of obtaining a Ph.D, *Id.* ¶¶ 19–20. Liao has also plausibly alleged that he suffered adverse actions *because* of his race or national origin. In February 2020, UTSA's Dr. Brey told Liao that Liao "ha[d] no right to refuse" to run an experiment violating safety and employment protocols due to "his position as [an] international student" in need of job support. *Id.* ¶ 23. Liao ran this experiment. *Id.* In December 2020, UTSA administrators also allegedly tricked Liao into paying over $5,000 to UTSA[7] and threatened him with deportation if he did not comply. *Id.* ¶¶ 48–50.[8]

Liao—in claiming UTSA's actions discriminated against him because of his status as a Taiwanese and Asian student in these two incidents—alleged sufficient facts to "nudge [] [his] claims across the line from conceivable to plausible." *Cicalese*, 924 F.3d at 768 (citing *Twombly*,

---

[7] This is less than clear, but Plaintiff appears to allege that he was required to pay some amount of tuition, whereas a non-Taiwanese/Asian graduate student was not required to make this payment (Ph.D. student, Zahra Rajabi, who worked in the same lab as Liao's mentor, was offered a Teaching Assistant position and her tuition was paid for). *Id.* ¶ 64.

[8] The Magistrate Judge read the FAC as alleging that UTSA "threatened Liao with deportation." ECF No. 38 at 11. The Court reads the FAC to be unclear whether UTSA explicitly threatened Liao with "deportation" or whether Liao himself admits that dismissal would result in deportation. *See id.* ¶¶ 48, 96. Because Liao is proceeding *pro se* and UTSA did not object to the Magistrate Judge's characterization of the FAC, the Court assumes that Plaintiff's allegation is that UTSA threatened him with deportation.

550 U.S. at 547). Being required to pay over $5,000 in tuition and allegedly being forced to run unsafe experiments are adverse actions. Also, an allegation that being an "international student" subject to deportation is interwoven with one's national origin. Rather than "conflat[ing]" citizenship and national origin, *Pathria v. Univ. of Texas Health Sci. Ctr. at San Antonio*, 531 F. App'x 454, 456 (5th Cir. 2013) (per curiam), the allegations that Dr. Brey and USTA made these statements are sufficient to overcome 12(b)(6) dismissal.

**Appropriate Person.** The Magistrate Judge correctly concluded that Liao adequately pleaded that he gave notice to an "appropriate person" who had an opportunity to rectify the situation. As the Magistrate Judge noted,

> Liao claims he reported the discrimination to at least five individuals and six UTSA offices. ECF No. 38 ¶¶ 6–11, 17, 21, 25, & 27. Several of these appear to have had the authority to take corrective measures and yet, according to the complaint chose not to, including UTSA's president, student affairs office, research integrity office, and various research deans.

> ECF No. 46 at 11–12.

These allegations need to demonstrate that Liao notified these people about the discrimination at issue and that they failed to respond. Merely telling an "appropriate person" about some issues does not imply that person is notified about all issues. If no one in authority knows about the issues, there can be no liability. *See Gebser*, 524 U.S. at 258–88. But Liao need not specify, at the pleading stage, exactly what was told to each person or when, so long as it is plausible that Liao gave notice to an "appropriate person" of the acts at issue after they occurred. Otherwise, Liao would be held to a "heightened pleading standard." *Cicalese*, 924 F.3d at 768.

Liao meets this burden. The two incidents that underpin Liao's discrimination claims occurred in February 2020 and December 2020. Liao reported the alleged "discrimination he

faced," ECF No. 33, after February 2020. And UTSA did not respond to Liao's complaints. At this stage, the Court draws the inference in favor of Liao that satisfies the "appropriate person" element.

**UTSA's Objections Fall Short.** UTSA does not address the statement that Liao had "no right to refuse" the experiment due to "his position as [an] international student." While UTSA asserts that Liao's claim that he was tricked into paying over $5,000 under the threat of deportation is "implausible," ECF No. 48 at 4, this is a dispute about whether it occurred and is inappropriate to resolve in UTSA's favor at this stage. UTSA's reliance on *Mohamed for A.M. v. Irving Indep. Sch. District* misses the mark. In *Mohamed,* the court rejected the race discrimination claim because the plaintiff "advance[d] only his subjective beliefs" that the actions at issue were "based on his race." 252 F. Supp.3d 602, 627 (N.D. Tex. May 18, 2017). While the FAC is full of Liao's subjective beliefs and conclusory allegations, there *are* at least two explicit statements that tie UTSA's actions to Liao's race or national origin. This is enough to get past the hurdle that a complaint set forth "specific allegations of acts" to state a claim for Title VI violations. *Mohamed for A.M.*, 252 F. Supp.3d at 627 (citing *Muthukumar*, 2010 WL 5287530, at *5).

UTSA also argues that Liao failed to plead "specific facts" alleging that the "appropriate person" had actual knowledge of the discrimination and responded with deliberate indifference. "[D]etermining whether, from [Liao's] reports, an official with the ability to take corrective action learned of [the incidents] is necessarily a fact-intensive inquiry," *Doe 1 v. Baylor Univ.*, 240 F. Supp. 3d 646, 659 (W.D. Tex. 2017), and unsuitable for resolution at this stage. UTSA's reliance on *Mohamed for A.M.* is again inapposite because, unlike here, there were "no allegations that any 'appropriate person' was aware of unlawful discrimination." *Mohamed for A.M.*, 252 F. Supp.3d at 628.

## II.  Racially Hostile Environment Under Title VI

The Court incorporates the Recommendation's statement of the law to an extent.

A Title VI racially "hostile environment claim arises from the 'cumulative effect of individual acts,' some of which 'may not be actionable on [their] own." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 583-84 (5th Cir. 2020) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002)). These acts must amount to abuse that is "'so severe, pervasive and objectively offensive' that it deprive[s a plaintiff] of an educational benefit" provided by the school. *Id.* at 584 (quoting *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999)). An educational institution "is liable for that harassment if it knew about the abuse and was deliberately indifferent." *Id.* (citation omitted). Especially probative in this context are instances where an educator or administrator treats a student "differently from students" who do not share a Title VI protected trait. *Id.* Finally, while "the harassment must be more than the sort of teasing and bullying that generally takes place in schools," "being shamed and humiliated on the basis of one's race" can raise a claim. *Fennell v. Marion Indep. Sch. Dist.*, 804 F. 3d 398, 409 (5th Cir. 2015) (internal citations and quotations omitted).

ECF No. 46 at 13.

But it is not the case that a viable discrimination claim under Title VI automatically turns into a racially hostile environment claim. Cases such as *Fennel* and *Sewell* involve egregious facts of racially charged acts over a prolonged period. Many acts were alleged in those cases. *See also Sneed v. Austin Indep. Sch. Dist.*, 490 F. Supp.3d 1069, 1084 (W.D. Tex. 2020) (evidence of "heinous racial epithets" and the "use of a noose" coupled with "vitriolic and epithet-laden graffitied slurs"); *Walker v. Thompson*, 214 F.3d 615, 626 (5th Cir. 2000), *abrogated on other grounds*, *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2005) (racially offensive remarks made every few months over three years).[9] Other ways to show a racially hostile environment include where employees make racist attacks that are directed at others, *see Fennell*, 804 F.3d at 409, physical attacks, *see Doe v. Galster*, 768 F.3d 611, 618 (7th Cir. 2014), or even

---

[9] Cases in other circuits to have considered this issue have similarly appalling facts. *See*, e.g., *Bryant v. Indep. School Dist. No. I-38 of Garvin County*, 334 F.3d 928, 931 (10th Cir. 2003) ("presence of offensive racial slurs, epithets, swastikas, and the letters "KKK" inscribed in school furniture and in notes placed in African American students' lockers and notebooks"); *Zeno v. Pine Plains Cent. School Dist.*, 702 F.3d 655, 666–67 (2d Cir. 2012) (over three-and-a-half years of taunting, harassing, menacing, and physical assaults, alongside frequent pejorative references to his skin tone, racial epithets, and implied threats of lynching).

perhaps where the racially charged actions "publicly" humiliate an employee, *Pfang v. Lamar Inst. of Tech.*, 685 F. Supp.3d 425 (E.D. Tex. 2023) (surviving motion to dismiss). These are rare cases. And while none are dispositive, there is a limiting factor to all: the "severe, pervasive, and objectively offensive" conduct must be "*based on*" the plaintiff's race. *Sewell*, 974 F.3d at 584 (emphasis added).

### A. Liao's Racially Hostile Environment Claim Fails

Liao's claim fails because the only specific allegations Liao puts forward about his race or national origin are those that support his discrimination claim. The "cumulative effect" of these two incidents—in February 2020 and December 2020—are not sufficient to plausibly allege a "severe, pervasive, and objectively offensive" environment such that it "deprive[d Liao] of an educational benefit" provided by UTSA. *Sewell*, 974 F.3d at 584 (quoting *Davis*, 526 U.S. at 650). It is not plausible that two statements over the course of a year create such an environment. There are no allegations that UTSA made racially charged statements to others about Taiwanese or Asians, no allegation of physical violence, and the two actions at issue were directed to Liao in private. While Liao claims that UTSA discriminated against him because of race and national origin throughout the FAC, these are conclusory statements that merely track his subjective belief and are untethered to specific actions.

The Court therefore respectfully disagrees with the Magistrate Judge's analysis because it improperly conflated Liao's allegations that he was "singled out among his peers and prevented from pursuing gainful student employment and conducting research" and his allegations that he was discriminated against because of race or national origin. ECF No. 46 at 14. Liao did not allege specific facts that meets the necessary pleading burden to establish a racially hostile environment.

### III.   Retaliation Claims Under Title VI

The Magistrate Judge found that Liao pleaded a viable Title VI retaliation claim because he engaged in various forms of protected activity and UTSA took material adverse action against Liao in "direct retaliation for his outcry." ECF No. 46 at 15–16. UTSA does not object to this conclusion. Under clear error review, the Court determines that this is not contrary to law.

UTSA, however, objects to the Magistrate Judge's conclusion because the Fifth Circuit has not recognized a Title VI retaliation claim. ECF No. 48 at 7. Outside of this cursory argument, UTSA provides zero support for why the Court should conclude that there is no private right of action for a Title VI retaliation claim. While the Fifth Circuit has not yet explicitly recognized this claim, it has assumed without deciding that it is cognizable in multiple cases over the past few years.[10] Other circuits have explicitly recognized Title VI retaliation claims. *See Peters v. Jenney*, 327 F.3d 307, 320 (4th Cir. 2003); *Whitfield v. Notre Dame Middle Sch.*, 412 F. App'x 517, 522 (3d Cir. 2011).

## IV.   <u>Title VII</u>

Enacted to "assure equality of employment opportunities," *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44 (1974), Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." § 2000e–2(a)(1). Title VII has a separate antiretaliation provision which prohibits an employer from "discriminat[ing] against" an employee or job applicant because that individual "opposed any practice" made unlawful by Title VII or

---

[10] *See Bhombal v. Irving Indep. Sch. Dist.*, 809 F. App'x 233, 238 (5th Cir. 2020); *Sewell*, 974 F.3d at 586 n.4; *Jones v. S. Univ.*, 834 F. App'x 919, 923 n.3 (5th Cir. 2020); *BW by next friends M.W. v. Austin Indep. Sch. Dist.*, No. 22-5018, 2023 WL 128948 (5th Cir. 2023), *reh'g en banc granted, opinion vacated sub nom. B.W. v. Austin Indep. Sch. Dist.*, 72 F.4th 93 (5th Cir. 2023).

"made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation. § 2000e–3(a).

Because claims under Title VII must relate to employment, one key difference between Title VI and Title VII claims is that Title VII requires a plaintiff to be an "employee." *See Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 9118, 926 (5th Cir. 2021). The Fifth Circuit applies a "hybrid economic realities/common law control" test to determine "whether an entity exercises enough control over an individual to qualify as his employer *Id.* On the merits of the claim, the *McDonnell Douglas* framework is the analytical tool to frame the analysis but is not dispositive at the pleading stage.

### A. Liao's Title VII Discrimination and Retaliation Claims Survive

**Liao is an Employee of UTSA**. The Magistrate Judge found that Liao adequately plead that he is an employee of UTSA. ECF No. 46 at 17–18. UTSA did not object to this finding. *See* ECF No. 48 (never mentioning "employee" once). The Court concludes that the Magistrate Judge's finding is not contrary to law.

**Discrimination.** For similar reasons as Liao's discrimination claim under Title VI, his claim under Title VII survives as well. "To plead a disparate-treatment claim under Title VII, a plaintiff must allege facts plausibly showing "(1) an 'adverse employment action,' (2) taken against a plaintiff 'because of her protected status.'" *Hamilton*, 79 F.4th at 502.[11] In a case involving disparate treatment, as here, a plaintiff "must show discriminatory intent." *Lee v. Conecuh County Bd. of Ed.*, 634 F.2d 959, 961, n. 3 (5th Cir. 1981). What constitutes an adverse action or "harm" is not subject to "bright-line rules." *Wanamaker v. Columbian Rope Co.*, 108

---

[11] The Fifth Circuit uses the "shorthand 'adverse employment action' to refer to an employment decision that negatively affects the compensation, terms, conditions, or privileges of employment." *Stone v. Louisiana Dept. of Revenue*, 590 Fed. App'x 332, 340 (5th Cir. 2014) (per curiam) (citing *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281–82 (5th Cir. 2004).

F.3d 462, 466 (2d Cir. 1997). The Fifth Circuit has not definitively addressed the "precise level of minimum workplace harm" necessary to establish an "adverse action," *Hamilton*, 79 F.4th at 505, besides stating that something more than *de minimis* harm is required, *Harrison v. Brookhaven Sch. District*, 82 F. 4th 427, 431 (5th Cir. 2023) (citing *Hamilton*, 79 F.4th at 505). Being placed in a "disadvantageous" situation likely suffices. *Muldrow v. City of St. Louis*, 601 U.S. 346, 354 (2024) (citing *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998)).

Liao's employment discrimination claim rests on the same unsafe experiment and payment of over $5,000 as his Title VI claims because these are the only specific allegations that mention his national origin. While the Court cannot discern that Liao's *tuition payment* of over $5,000 relates to his "compensation, terms, conditions, or privileges of employment," § 2000e–2(a)(1), he was employed as a research assistant when he ran the unsafe experiment. ECF No. 38 ¶ 23. Like his Title VI claim, it is plausible that Dr. Brey placed Liao in this disadvantageous position because of his national origin. To the extent UTSA argues this fact is insufficient to state a claim, the Court is not persuaded. While it may not be much, it is enough.

**Retaliation.** To establish a Title VII claim, a plaintiff must show that (1) he engaged in protected activity, (2) he suffered an adverse employment action, and (3) a causal link exists between the protected activity and the adverse employment action. *See Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 434 (5th Cir. 2021). "Protected activities consist of (1) opposing any practice deemed an unlawful employment practice by [T]itle VII (the 'opposition clause') or (2) making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under [T]itle VII (the 'participation clause')." *Ellis v. Compass Grp. USA, Inc.*, 426 F. App'x 292, 296 (5th Cir. 2011) (internal citations omitted). Compared to the discrimination context, an "adverse employment action" for retaliation claims under Title VII appears to have a

higher bar. It requires that the retaliatory action is "materially adverse," such that it "might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *see Muldrow*, 601 U.S. at 357 (distinguishing between harm for discrimination and retaliation).

The Magistrate Judge correctly concluded that Liao stated a claim for retaliation under Title VII.

> First, he engaged in protected activity under both the opposition and participation clauses by resisting UTSA's attempts to pressure him to perjure himself in Title VII investigations, and outcrying to the Equal Opportunity Employment Commission, UTSA administrators and staff regarding the perceived discrimination he suffered at the hands of Drs. Brey and Browning. *See, e.g.* [ECF]. No. 38 ¶¶ 14-17, 19, 25, 42, 45-47, 90, 93-94. Second, UTSA took various material adverse actions, including removing Liao from UTSA research systems and restricting his job responsibilities after he reported his treatment to the UTSA human resources department. *Id.* ¶¶ 42, 45, 93-95. Third, Liao alleges these actions were taken in retaliation for his outcry, thus providing "a causal connection . . . between [Liao's] protected activity and the adverse employment action." *Brazoria County*, 391 F.3d at 692; *see also*, *id*.

> ECF No. 46 at 21.

UTSA's objections that Liao did not plead sufficient facts to establish the protected activity and adverse action are unavailing. Being removed from and restricted in employment while in graduate school, especially given one's precarious status as an "international student," would dissuade a reasonable worker from making a charge of discrimination. To the extent UTSA argues that Liao failed to allege causality, (*see* ECF No. 41 at 12), the Court is unmoved. The Fifth Circuit has often "found temporal proximity on the scale of weeks to a few months sufficient to establish a causal link." *Smith v. Kendall*, No. 23-50713, 2024 WL 4442040, at *7 (5th Cir. Oct. 8, 2024) (citing cases). Liao alleged at least some protected activity and subsequent adverse actions within such a timeframe.

Liao claims he filed his first EEOC charge in April 2021, ECF No. 38 ¶ 92, and reported his complaints of discrimination to several UTSA administrators and staff throughout all of 2021, including the months preceding Summer 2021, *id.* ¶¶ 7, 9–12. Summer 2021 is when many of the adverse employment actions allegedly occurred (Liao was terminated from his Teaching Assistantship in May 2021, *id.* ¶ 42, removed from the UTSA research system between May 2021 and August 2021, *id.*, rejected from research assistant positions in the Summer of 2021, *id.* ¶ 73, and demoted and underpaid in September 2021, *id.* ¶ 98). This is more than enough to plead causality at this stage.

## **CONCLUSION**

For the foregoing reasons, the Court **ADOPTS in part and REJECTS in part** the Magistrate Judge's Recommendation (ECF No. 46). Plaintiff Liao's Title VI and Title VII claims for (i) race or national origin discrimination and (ii) retaliation will **PROCEED**. Liao's Title VI claims alleging a racially hostile environment are **DISMISSED WITH PREJUDICE**. Liao's Title VII claims for sex-discrimination and any claims for injunctive relief for his Ph.D are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that UTSA's Motion to Dismiss (ECF No. 41) is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that the parties are to confer and submit a proposed scheduling order within fourteen days of this Order. Until the Court issues an amended scheduling order, the Court finds this case is appropriate for administrative closure. *See Mire v. Full Spectrum Lending, Inc.*, 389 F.3d 163, 167 (5th Cir. 2014) ("District courts frequently make use of this device to remove from their pending cases suits which are temporarily active elsewhere (such as

before an arbitration panel) or stayed (such as where a bankruptcy is pending). The effect of an administrative closure is no different from a simple stay . . . .").

The Clerk's office is therefore **DIRECTED** to administratively close this case pending further order of the Court. Though administratively closed, this case will still exist on the docket of the Court and parties may continue to file motions and documents in the case.

**IT IS SO ORDERED**.

**SIGNED** this 23rd day of October, 2024.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE